**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (818) 532-6499
E-mail: jpafiti@pomlaw.com
*- additional counsel on signature page -*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK M. and DEBORAH P. GIBRALL, Individually and on Behalf of All Others Similarly Situated,<br><br>                                          Plaintiffs,<br><br>    vs.<br><br>INTREXON CORPORATION, RANDAL J. KIRK, and RICK L. STERLING,<br><br>                                          Defendants | Case No.<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiffs Patrick M. and Deborah P. Gibrall ("Plaintiffs"), individually and on behalf of all other persons similarly situated, by Plaintiffs' undersigned attorneys, for Plaintiffs' Complaint against Defendants (defined below), allege the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiffs' attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by Intrexon Corporation ("Intrexon" or the "Company"), as well as media and analyst reports about the Company. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased the securities of Intrexon between May 12, 2015 and April 20, 2016, inclusive (the "Class Period"), seeking to recover compensable damages caused by Defendants' violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §78j (b) and 78t (a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

4.      Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b) as Defendants conducts business in this district and a significant portion of the Defendants' actions and the subsequent damages took place within this District.

5.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiffs, as set forth in the accompanying certification, incorporated by reference herein, purchased Intrexon securities at artificially inflated prices during the Class Period and have been damaged thereby.

7.    Defendant Intrexon is a company incorporated under the laws of Virginia and headquartered in Germantown, Maryland. Defendant Intrexon is purportedly a leader in the field of synthetic biology. It maintains offices in South San Francisco, California. Its securities trade on NYSE under the ticker symbol "XON."

8.    Defendant Randal J. Kirk ("Kirk") has served as the Company's Chairman and Chief Executive Officer and Director throughout the Class Period.

9.    Defendant Rick. L. Sterling ("Sterling") has served as the Company's Chief Financial Officer throughout the Class Period.

10.    The defendants referenced above in ¶¶ 8 – 9 are sometimes referred to herein as the "Individual Defendants."

11.    Defendant Intrexon and the Individual Defendants are referred to herein, collectively, as the "Defendants."

12.    Each of the Individual Defendants:

(a)    directly participated in the management of the Company;

(b)    was directly involved in the day-to-day operations of the Company at the highest levels;

(c)    was privy to confidential proprietary information concerning the Company and its business and operations;

(d)    was involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)    was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and

(f)    approved or ratified these statements in violation of the federal securities laws.

13.    As officers, directors, and controlling persons of a publicly-held company whose securities are and were registered with the SEC pursuant to the Exchange Act, and was traded on NYSE and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate accurate and truthful information promptly with respect to the Company's business prospects and operations, and to correct any previously-issued statements that had become materially misleading or untrue to allow the market price of the Company's publicly-traded stock to reflect truthful and accurate information.

14.    Intrexon is liable for the acts of the Individual Defendants and its employees under the doctrine of respondeat superior and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

15.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Intrexon under respondeat superior and agency principles.

## SUBSTANTIVE ALLEGATIONS

### Background

16.    Intrexon operates in the synthetic biology field in the United States. The Company, through a suite of proprietary and complementary technologies, designs, builds, and regulates gene programs, which are DNA sequences that consist of key genetic components.

### Materially False And Misleading Statements

17.    On May 11, 2015, the Company filed its quarterly report on Form 10-Q for the quarterly period ended March 31, 2015 (the "Q1 2015 10-Q") with the SEC, which contained the Company's financial results for the quarter ending March 31, 2015. The Q1 2015 10-Q was signed by Defendant Sterling. The Q1 2015 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Kirk and Sterling attesting to the accuracy of the Q1 2015 10-Q.

18.    On August 10, 2015, the Company filed its quarterly report on Form 10-Q for the quarterly period ended June 30, 2015 (the "Q2 2015 10-Q") with the SEC, which contained the Company's financial results for the quarter ending June 30, 2015. The Q2 2015 10-Q was signed by Defendant Sterling. The Q2 2015 10-Q contained signed SOX certifications by Defendants Kirk and Sterling attesting to the accuracy of the Q2 2015 10-Q.

19.    On November 9, 2015, the Company filed its quarterly report on Form 10-Q for the quarterly period ended September 30, 2015 (the "Q3 2015 10-Q") with the SEC, which contained the Company's financial results for the quarter ending September 30, 2015. The Q3 2015 10-Q was signed by Defendant Sterling. The Q3 2015 10-Q contained signed SOX certifications by Defendants Kirk and Sterling attesting to the accuracy of the Q3 2015 10-Q.

20.    On February 29, 2016, the Company filed its annual report on Form 10-K for the year ending December 31, 2015 (the "2015 10-K") with the SEC, which contained the Company's financial results for the year ending December 31, 2015. The 2015 10-K was signed by Kirk and Sterling. The 2015 10-K contained signed SOX certifications by Defendant Kirk and Sterling attesting to the accuracy of the 2015 10-K and effectiveness of the Company's internal controls over financial reporting.

21.    The statements referenced in ¶¶17 – 20 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Intrexon was overstating its revenue; and (ii) as a result, Defendants' statements about Intrexon's business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

**The Truth Emerges**

22.    On April 21, 2016, analyst firm Spotlight Research issued a report about Intrexon asserting, among other things, that the Company's revenues are overstated by 50% through transactions with related parties.

23.    On this news, share of Intrexon fell $9.73 per share or approximately 26% from its previous closing price to close at $27.10 per share on April 21, 2016, damaging investors.

24.    On April 27, 2016, Spotlight Research issued a report about Intrexon, which elaborated on the Company's transactions with related parties, stating in part:

> XON thinks of themselves as a royalty company. The idea is that they find an interesting application for their technology, create a JV or Exclusive Channel Collaboration ("ECC") with an independent third party interested in pursuing that application, and take a royalty from the sales in that area if/when the technology is commercialized. While that idea is noble enough, in practice, XON does not do this in our view.

> In reality, we believe that XON is creating revenues through round-tripping their own cash via related parties.

> These transactions represent almost half of XON's total revenues. The transactions are simple to understand. First, XON (together with CEO RJ Kirk's private investment vehicle Third Security) gives cash to the JV/ECC partner. Then, the JV/ECC partner gives that cash right back to XON in exchange for "services" rendered. We see no meaningful products being commercialized or material advancements being made. Yet XON is able to recognize substantial revenue growth through moving their own cash via these transactions.

6



Collaboration revenues used to represent effectively all of XON's revenues until late 2014 when M&A changed the mix. Still, collaboration revenues have represented — 50% of XON 2015 revenue. Thus, we believe that XON's revenue is overstated by a factor of two by turning financing cash flow into revenues.

Furthermore, according to XON's 2015 10-K, the company recognized $77.4MM of collaboration revenues from related parties in 2015 out of a total of S87.8MM of collaboration revenues. Thus, related party revenues represent 88% of 2015 collaboration revenue. The company also generated $84.8MM of products and services revenue related primarily to the company's 2014 Trans Ova acquisition (Trans Ova to be addressed in upcoming Part 4 of our report). Since total 2015 revenue was $173.6MM, this means that related party revenues represent 45% of total revenues, and that related party revenues plus Trans Ova revenues represent over 93% of total 2015 revenue for XON.

*      *      *

**MISMATCH BETWEEN XON REPORTED REVENUE FROM PARTNERS AND AMOUNTS PARTNERS CLAIM TO HAVE PAID TO XON**

Even the related party deals that create XON's revenue may be overstated. We compared XON financial statements with customer financial statements and found large discrepancies between the revenue that XON reports and the payments that customers claim to have made to XON.

For example, in their 2015 10-K filing, XON claims that Ziopharm was their largest customer and paid them $14.6 million and $19.3 million in 2014 and 2015, respectively.



https://www.sec.gov/Archives/edgar/data/1356090/000135609016000092/xon-20151231x10k.htm

Strangely, in Ziopharm's 2015 10-K filing, they claim that they only paid XON $12.0 million and $16.3 million in 2014 and 2015, respectively, or 16% less than the amount claimed by XON.

During the years ended December 31, 2015, 2014 and 2013, the Company expensed $16.3 million, $12.0 million, and $7.8 million respectively, for services performed by Intrexon

https://www.sec.gov/Archives/edgar/data/1107421/000119312516475875/d1l3701d10k.htm

The pattern holds true across the companies where we were able to crosscheck XON's claims. In aggregate, XON claimed to have received 7% more revenue from the below ECC partners in 2015 than the ECC partners claimed to have paid to XON.

|  | XON Reported | | Partner Reported | | Difference Reported | |
|---|---|---|---|---|---|---|
|  | **2014** | **2015** | **2014** | **2015** | **2014** | **2015** |
| Ziopharm | 14.6 | 19.3 | 12.0 | 16.3 | -17.9% | -15.6% |
| Oragenics | 1.6 | 6.5 | 0.9 | 5.6 | -44.4% | -14.9% |
| Fibrocell | 6.2 | 12.2 | 9.4 | 15.9 | 51.8% | 30.6% |
| OvaXon | 2.8 | 2.5 | 2.5 | 0.0 | -10.7% | -100.0% |
| **Total** | 25.3 | 40.6 | 24.8 | 37.8 | -1.8% | -6.9% |

*Source: SEC filings*

25.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

26.    Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Intrexon securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

27.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Intrexon securities were actively traded on NYSE. While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Intrexon or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

28.    Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

29.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

30.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Intrexon;

- whether the Individual Defendants caused Intrexon to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Intrexon securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

31.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

32.     Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

10

- Intrexon securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiffs and members of the Class purchased, acquired and/or sold Intrexon securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

33.     Based upon the foregoing, Plaintiffs and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

34.     Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**Violations of Section 10(b) of The Exchange Act and Rule 10b-5**
**Against All Defendants**

35.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

36.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

37.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiffs and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Intrexon securities; and (iii) cause Plaintiffs and other members of the Class to purchase or otherwise acquire Intrexon securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

38.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Intrexon securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Intrexon's disclosure controls and procedures.

39.     By virtue of their positions at Intrexon, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiffs and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts

12

were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

40.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Intrexon, the Individual Defendants had knowledge of the details of Intrexon's internal affairs.

41.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Intrexon. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Intrexon's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Intrexon securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Intrexon's business and financial condition which were concealed by Defendants, Plaintiffs and the other members of the Class purchased or otherwise acquired Intrexon securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

42.    During the Class Period, Intrexon securities were traded on an active and efficient market. Plaintiffs and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Intrexon securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiffs and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or

would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiffs and the Class, the true value of Intrexon securities was substantially lower than the prices paid by Plaintiffs and the other members of the Class. The market price of Intrexon securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiffs and Class members.

43.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

44.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### Violations of Section 20(a) of The Exchange Act
### Against The Individual Defendants

45.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

46.     During the Class Period, the Individual Defendants participated in the operation and management of Intrexon, and conducted and participated, directly and indirectly, in the conduct of Intrexon's business affairs. Because of their senior positions, they knew the adverse non-public information about Intrexon's operations, current financial position and future business prospects.

47.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Intrexon's business practices, and to correct promptly any public statements issued by Intrexon which had become materially false or misleading.

14

48.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Intrexon disseminated in the marketplace during the Class Period concerning the Company's disclosure controls and procedures. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Intrexon to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Intrexon within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Intrexon securities.

49.     Each of the Individual Defendants, therefore, acted as a controlling person of Intrexon. By reason of their senior management positions and/or being directors of Intrexon each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Intrexon to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Intrexon and possessed the power to control the specific activities which comprise the primary violations about which Plaintiffs and the other members of the Class complain.

50.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Intrexon.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiffs as the Class representatives;

B.      Requiring Defendants to pay damages sustained by Plaintiffs and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiffs and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury.

Dated: May 5, 2016

Respectfully submitted,

**POMERANTZ LLP**

By: *s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:  (818) 532-6499
Email: jpafiti@pomlaw.com

**POMERANTZ, LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile:  (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

16

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ & GROSSMAN**
Peretz Bronstein, Esq.
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Fax: (212) 697-7296
Email: peretz@bgandg.com

*Attorneys for Plaintiffs*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1. I, *Patrick M Ghrall / Deborah P Ghrall* make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Intrexon Corporation ("Intrexon" or the "Company") and, authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire Intrexon securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Intrexon securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in Intrexon securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.  I declare under penalty of perjury that the foregoing is true and correct.

Executed _____5-5-2016_____
                (Date)

_Deborah P. Gibrall_

_Patrick M. Gibrall_
                (Signature)

_PATRICK M. GIBRALL_
                (Type or Print Name)

_Deborah P. Gibrall_

**INTREXON CORPORATION (XON)**                    **Gibrall, Patrick M. and Deborah  P.**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| **Account 1** | | | |
| 7/17/2015 | Purchase | 100 | $55.6399 |
| **Account 2** | | | |
| 11/3/2015 | Purchase | 100 | $39.1300 |
| 11/3/2015 | Purchase | 100 | $39.5900 |
| 4/11/2016 | Purchase | 200 | $33.8500 |